**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Darlene G. BRUCHEY,
Defendant-Appellant.**

No. 86–5561.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 14, 1986.

Decided Feb. 5, 1987.

James McCall Cagle, Charleston, W.Va.,
on brief, for defendant-appellant.

Larry R. Ellis, Asst. U.S. Atty. (David A. Faber, U.S. Atty., Charleston, W.Va., on brief), for plaintiff-appellee.

Before PHILLIPS and CHAPMAN, Circuit Judges, and ROBERT EARL MAXWELL, Chief United States District Judge for the North District of West Virginia, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

This appeal concerns an order of criminal restitution made pursuant to the Victim and Witness Protection Act of 1982. 18 U.S.C. §§ 3579, 3580. We remand for findings of fact omitted from the restitution order and offer some guidelines on fashioning appropriate orders under the VWPA.

I

In a pre-indictment agreement, defendant Darlene Bruchey pleaded guilty to embezzling $50,000 from Magnet Bank, F.S.B., and to making a false entry in the bank's records by entering an unauthorized withdrawal. 18 U.S.C. §§ 657, 1006. On June 24, 1985, the United States District Court for the Southern District of West Virginia sentenced her to two concurrent five-year terms, the maximum sentence, and ordered a 60–day diagnostic study of the defendant.

After a September 11, 1985, hearing, the court modified the defendant's sentence to five years probation and ordered her to make restitution to Magnet. At this September hearing, the court reviewed the presentence report with the defendant and her counsel, and expressed skepticism about her ability to repay the embezzled money. The defendant insisted, however, that her new husband, who earned approximately $380 per week, could support her and her two children from a former marriage. She insisted that she could pay Magnet all of the money she earned until the money was returned. The order entered by the court after this hearing did not offer any findings of fact to support the restitution order and did not specify the timing, form or amount of the restitution. The court ap-

parently relied on the promise of the defendant to reach some sort of private agreement to repay Magnet.

On September 23, 1985, Magnet's attorney sent a "draft" agreement to the defendant's attorney, informing him that once the agreement was "in form which is mutually acceptable" the defendant should return the agreement to him. Magnet's attorney also indicated that he would forward a copy of the agreement to Magnet for their suggestions. The draft agreement, in the form of a promissory note, required the defendant to pay $100 per month or 20% of her take-home pay, whichever was greater, until the $50,000 was repaid. When Magnet saw its attorney's draft agreement it demanded certain changes. In particular, it insisted that the appellant pay $100 per month or 75% of her take-home pay, that the agreement be executed under seal (thereby extending the period of enforcement under the law of South Carolina, where the defendant now lives), and that Magnet be notified of any after-acquired property on which Magnet could secure a lien.

Before Magnet had the opportunity to communicate its suggested revisions, the defendant's attorney reduced it to final form, and obtained the signatures of the defendant and a local Magnet bank manager. Magnet, however, repudiated the "agreement," insisting that the bank manager lacked authority to sign the promissory note, and demanded that the defendant agree to its proposed modifications. On March 7, 1986, the district court ordered the defendant to appear to "clarify" the restitution requirement of her sentence. At an April 7, 1986, hearing the court, recognizing that the parties had not and would not agree on mutually acceptable terms for the promissory note, ordered the defendant to sign Magnet's proposed agreement. The defendant objected that the terms were unreasonable. By order dated April 10, 1986, the district court modified its prior order to read:

Accordingly, it is hereby ORDERED that Special Condition No. 1 of defendant's

probation, as set forth in the Judgment and Probation/Commitment Order dated September 20, 1985, be modified to read as follows:

(1) She make restitution in accordance with 18 U.S.C. § 3579 to Magnet Bank in the amount of Fifty Thousand Dollars ($50,000), as set forth in the plea agreement between the United States and the defendant filed herein on May 1, 1985, and that defendant shall make restitution payments of One Hundred Dollars ($100.00) monthly or 75% of her monthly "take-home" pay, whichever is greater. Further, in order to effectuate the terms of her expressed desire and offer to make full restitution of said sum, the defendant shall execute an agreement with Magnet Bank, under seal, containing the following provisions:

(a) Magnet Bank shall be notified of any assets acquired by defendant and the defendant shall perfect a lien thereon in favor of the Bank; and

(b) It is understood that the execution of the agreement under seal has the effect of increasing the statute of limitations under South Carolina law from seven (7) to twenty-one (21) years.

There is no dispute that the defendant, who has only been partly employed since her sentencing, has remained in compliance with the modified order of April 10, 1986, by paying $100 per month to Magnet. She appeals that final order here.

## II

■ Trial judges traditionally enjoy broad discretion in setting criminal sentences. *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). This general principle applies as well to restitution orders under the Victim and Witness Protection Act of 1982. *United States v. Richard*, 738 F.2d 1120, 1122 (10th Cir.1984). Such a criminal restitution order will not be overturned absent an abuse of discretion. *Herzfeld v. United States District Court*, 699 F.2d 503, 506 (10th Cir.1983); *United States v. Carson*, 669 F.2d 216, 217 (5th Cir.1982); *see also United States v. McMichael*, 699 F.2d 193, 194 (4th Cir.1983) (broad discretion under the restitutionary provision of 18 U.S.C. § 3651).

Despite the basic need for appellate deference to trial court sentencing, however, the sentencing process is not free from close appellate scrutiny. To begin with, appellate courts must carefully examine the *process* by which punishment is imposed even while deferring to the trial judge's ultimate sentencing decision. *United States v. Sparrow*, 673 F.2d 862, 864 (5th Cir.1982). In addition, sentencing statutes like the VWPA themselves impose important substantive and procedural limitations on the trial judge's discretion.

■ The VWPA implicitly requires the district judge to balance the victim's interest in compensation against the financial resources and circumstances of the defendant—all while remaining faithful to the usual rehabilitative, deterrent, retributive and restrictive goals of criminal sentencing. Section 3580(a) accordingly provides that the judge

in determining whether to order restitution ... and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

■ Since Congress has seen fit to require the several determinations of § 3580(a), we are in turn obligated to insure that they are made. Effective appellate review, however, is difficult unless the trial court makes explicit fact findings on these statutory factors. For that reason, we join those courts which have invoked their supervisory power to require district courts to make specific fact findings on those matters relevant to application of the VWPA. *See United States v. Hill*, 798 F.2d 402, 406–07 (10th Cir.1986); *United*

*States v. Palma*, 760 F.2d 475, 480 (3d Cir.1985). Since no fact findings accompanied either the September 20 restitutionary order or the modified order of April 10, we must remand.

A brief review of the necessary factual determinations omitted here will underscore the need for our requirement. First, § 3580(a) requires a calculation of the victim's loss. There was no dispute here that the defendant embezzled $50,000. However, § 3579(e)(1) explicitly provides that the court cannot impose restitution for a loss "for which the victim has received or is to receive compensation," though the court may order restitution to an insurer or third party who has already compensated the victim. The Presentence Report indicates that Magnet is insured with a $25,000 deductible; it also indicates that "the bank has yet to make a claim hoping that the defendant would make restitution." The sentencing hearings reveal no discussion of the insurance policy, and the district court should make a specific inquiry, and offer·findings of fact, to insure compliance with § 3579(e)(1). *See United States v. Durham*, 755 F.2d 511, 514–15 (6th Cir.1985).

The trial court should also make clear findings of fact on the defendant's resources, and the financial needs and earning ability of the defendant and the defendant's dependents. Such findings of fact should be keyed to the specific type and amount of restitution ordered.

The record here, it is true, reveals some discussion at the September and April hearings about the defendant's ability to repay Magnet. No doubt fearing an active five-year sentence, she insisted that she would make full restitution and promised that her new husband could provide her basic needs and those of her two young children from a prior marriage. The district court, however, expressed well-founded skepticism about her ability to make prompt restitution, and never considered whether a long-term repayment obligation might later leave her unable to provide for herself or her children. Without some findings of fact, we cannot be sure that the district court even considered the possibility of future hardship for the defendant and her children. It is particularly inappropriate for the burden of restitution to fall on innocent dependents, and thus concomitantly important that this determination be fully developed. *United States v. Gomer*, 764 F.2d 1221, 1223–24 (7th Cir.1985).

III

The need for fact finding in accordance with § 3580(a) is apparent, and its absence easily remedied. More troubling and difficult, however, are the issues raised by the unusual character of the modified restitutionary order at issue here. By compelling the defendant to sign a long-term promissory note with the victim, the district court opened wide the Pandora's Box of criminal restitution generally, and the VWPA specifically. *See* Project, *Congress Opens a Pandora's Box—the Restitution Provisions of the Victim and Witness Protection Act of 1982*, 52 Fordham L.Rev. 507 (1984). The final order's novel fusion of civil compensatory and criminal restitutionary law may have occurred more accidentally than deliberately; the final order apparently evolved out of ambiguous three-way communications between judge, victim and defendant rather than through a calculated effort at innovation by any one of them. Whatever the genesis of the order, however, we believe that the final order is not contemplated in its present form by the VWPA, and that it creates difficult and unnecessary problems. The victim and defendant never "agreed" on the terms of a promissory note and we conclude that the district court should not compel a defendant to sign such an "agreement." Should the victim and defendant reach and offer to the district court a truly voluntary restitution agreement, it should be treated differently than it was treated here.

The VWPA quite clearly "limits the period within which restitution is due." *United States v. Fountain*, 768 F.2d 790, 803 (7th Cir.1985). The statutory limitations on the period of court-ordered criminal restitu-

tion are contained in several interrelated sections of the VWPA. Section 3579(f)(3) indicates that restitution will ordinarily be immediate. Section 3579(f)(1), however, permits the court to order restitution "within a specified period or in specified installments." When a judge orders restitution in installments, the "end of such period or the last such installment shall not be later than" the end of probation, five years after the end of a term of imprisonment, or five years after the date of sentencing. § 3579(f)(2). This limitation on the duration of installment restitution, as the Senate Report on the VWPA indicates, reflects the "practical necessity in limiting both the amount of restitution ordered and the period during which restitution payments are ordered to be made." S.Rep. 532, 97th Cong., 2d Sess. 32, *reprinted in* 1982 U.S.Code Cong. & Ad.News 2515, 2538.

By ordering the defendant to sign a promissory note on which payments would in all likelihood extend beyond her five years of probation, the district court accomplished indirectly what the statute forbids directly. The dangers of such disregard for the statutory requirements are not merely theoretical. "Normal" criminal restitution remains within the equitable power of the judge who orders it; he can modify his order (or at least refuse to revoke probation for failure to comply) if the circumstances of the defendant change. When the court purports to order a particular schedule of payment extending beyond the period of the court's jurisdiction, however, the opportunity for equitable adjustment ceases. Even if the court correctly determined that the defendant here can current-

ly pay 75% of her take-home pay to the victim, it cannot foresee the burden such a note may impose in the future. Should the defendant's husband later lose his job, become disabled or die, the defendant and her two children may not be able to make the payments and still provide their basic needs. The terms for repayment in dispute here were crafted by Magnet, as the government indicated at the April hearing, in part to make an example of the defendant. Such a "penal" objective may properly be pursued by a sentencing judge who takes into consideration all of the complexly interrelated objectives of criminal sentencing, and who can moderate his order if necessary. When such objectives are pursued outside the criminal sentencing process, however, we are concerned about the implications.*

Our expressions of concern regarding the duration and form of the restitutionary order should not be taken to mean that a promissory note or the like should never be countenanced as "restitution." Where the victim and defendant *voluntarily* execute such a note, the judge can certainly factor that agreement into his sentencing decision. We must observe, however, that such a voluntarily executed agreement constitutes *full and immediate restitution* —fully settling the victim's claim against the defendant. The district court, once it found that the agreement had been reached, would have no further role to play under the VWPA. The victim could simply enforce the civil obligation through the ordinary civil process.

■ A simple rule that district courts separate as best they can the predominate-

---

* This is by no means the only puzzle created by effectively incorporating a promissory note within a judicial order for restitution. The Supreme Court has recently held that because criminal restitution orders serve predominately "penal" objectives, the obligation is not dischargeable in bankruptcy. *Kelly v. Robinson,* —— U.S. ——, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). For the same reason, a judge can order restitution in installments that exceed the percentage of take home pay reachable in civil garnishment proceedings. We need not decide here whether an effort by Magnet to enforce

this hybrid order beyond the period of the court's jurisdiction would be "penal" or "compensatory." It is enough to observe that if the promissory note could be enforced by Magnet as it stands, the result might be unacceptable hardship to the defendant and dependents and unwise interference with the broad goals of sentencing. If, on the other hand, it could only be enforced as an ordinary, dischargeable civil obligation (or not enforced at all) then Magnet will have gained nothing it could not gain outside the district court's order.

ly "penal" elements of criminal restitution by court order and the purely "civil" elements of a private compensation agreement would work no hardship on victims while avoiding some of the problems in the as yet uncharted waters of criminal restitution law. A judge can, though he need not, order an indigent defendant to make full restitution, as the district court's first order apparently did. *See United States v. Atkinson*, 788 F.2d 900, 904 (2d Cir.1986). While the judge cannot revoke probation merely because the defendant cannot make restitution, *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), *United States v. Satterfield*, 743 F.2d 827, 842–43 (11th Cir.1984), he can monitor the defendant's efforts and exercise obvious leverage during the period of the court's jurisdiction. If the restitutionary order fails to satisfy the victim, he can seek a civil judgment when the court's jurisdiction ends or even while the restitutionary order is in effect. *See Teachers Insurance and Annuity Association v. Green*, 636 F.Supp. 415 (S.D.N.Y.1986). The prior restitutionary order operates to

> estop the defendant from denying the essential allegations of that offense [on which restitution was predicated] in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with state law, brought by the victim.

Section 3580(e).

Criminal restitution rests with one foot in the world of criminal procedure and sentencing and the other in civil procedure and remedy, though because it is part of the sentencing process it is fundamentally "penal" in nature. *Kelly v. Robinson*, —— U.S. ——, ——, 107 S.Ct. 353, 362–63, 93 L.Ed.2d 216 (1986). The VWPA, by emphasizing the role of restitution, can be expected to generate substantial litigation as judges attempt to accommodate the two often irreconcilably different systems. Some of the problems can be minimized or avoided altogether, however, if judges order restitution in conformity with the VWPA timetable unless they accept a voluntary agreement which fully and immedi-

ately satisfies the victim's claim as executed restitution.

VACATED AND REMANDED.