918 F.2d 174
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Betty Lee DAVIS, Defendant-Appellant.
 No. 90-5009.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 4, 1990.
Decided Nov. 14, 1990.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Fayetteville. W. Earl Britt, District Judge. (CR-89-28-3)
 Edwin Chrisco Walker, Assistant Federal Public Defender, Raleigh, N.C., (argued) for appellant; William E. Martin, Federal Public Defender, Raleigh, N.C., for appellant, on brief.
 Linda Kaye Teal, Assistant United States Attorney, Raleigh, N.C., (argued) for appellee; Margaret Person Currin, United States Attorney, Raleigh, North Carolina, for appellee on brief.
 E.D.N.C.
 AFFIRMED.
 Before DONALD RUSSELL and K.K. HALL, Circuit Judges, and STAMP, United States District Judge for the Northern District of West Virginia, Sitting by Designation.
 PER CURIAM:
 
 
 1
 Pursuant to a plea agreement, Betty Lee Davis pleaded guilty to possession of stolen mail and one count of criminal contempt, and she agreed to make restitution to her uncle in the amount of $377. She now appeals both the restitution order, because the district court did not make specific findings of fact as to her ability to pay the amount, and a $50 special assessment charged her for the criminal contempt conviction, as this was not authorized by statute. Finding no error below, we affirm.
 
 I.
 
 2
 In September of 1987, in Fayetteville, North Carolina, Betty Lee Davis came into possession of a stolen $377 Social Security check payable to Eula McNeill. Davis gave this check to her illiterate uncle, Eddie Butler, a parking lot attendant at First Citizens Bank, Fayetteville, and asked him to cash it for her at the bank. Butler did this, and Davis received the money.
 
 
 3
 On July 11, 1989, a grand jury for the United States District Court for the Eastern District of North Carolina indicted Davis for knowingly having an article of stolen mail in her possession, in violation of 18 U.S.C. Sec. 1708, and passing, uttering and publishing a United States Treasury Check bearing a falsely made or forged endorsement with the intent to defraud, in violation of 18 U.S.C. Sec. 510. Sixteen days after her indictment, Davis made her initial appearance before a federal magistrate who released her on various conditions, including that she report twice a week to the United States Probation Office and that she refrain from the use of narcotic drugs or other controlled substances.
 
 
 4
 A surprise urine specimen collected from Davis on August 4, 1989, proved positive for cocaine, and the Probation Office ordered her to report on at least two occasions for in-patient treatment at the Open House in Charlotte, North Carolina. On October 6, 1989, Davis failed to report for treatment at the Open House, and between October 6 and 23, she failed to report to the Probation Office. Thus, on October 24, 1989, a superseding indictment was handed down adding two counts of criminal contempt, for actions in violation of 18 U.S.C. Sec. 401(3), to her pending charges.
 
 
 5
 Pursuant to a plea agreement, Davis entered pleas of guilty to count one, possession of stolen mail, and count four, criminal contempt. In addition, she agreed to make restitution in the amount of $377 to Eddie Butler, in care of the First Citizens Bank, and to make this restitution a condition of probation, if so ordered by the Court.
 
 
 6
 At sentencing before the United States District Court for the Eastern District of North Carolina on January 22, 1990, Davis did not object to the finding that Eddie Butler was entitled to restitution in the amount of $377. The court sentenced Davis on count one to five years' imprisonment, with parole possible after one year; and on count four, the court ordered her imprisoned for sixty days, to be served concurrently with the other sentence. Also, Davis was ordered to pay restitution of $377 to Eddie Butler, and she was ordered to pay the court $50 special assessments on each of the two counts of conviction. Davis now appeals the restitution order and the $50 special assessment on the criminal contempt conviction.
 
 II.
 
 7
 The Victim and Witness Protection Act of 1982 allows a court, when sentencing a defendant convicted of an offense under Title 18, to order, "in addition to ... any other penalty authorized by law, that the defendant make restitution to any victim of such offense." 18 U.S.C. Sec. 3663(a) (formerly Sec. 3549(a)). Among the procedures necessary for issuing an order of restitution:
 
 
 8
 The court ... shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.
 
 
 9
 18 U.S.C. Sec. 3664(a) (formerly Sec. 3580(a)).
 
 
 10
 The seminal case in this circuit concerning restitution under the Victim and Witness Protection Act is United States v. Bruchey, 810 F.2d 456 (4th Cir.1987). In Bruchey, we held that criminal restitution orders will not be overturned absent an abuse of discretion. Yet this does not mean that the sentencing process should be free from close appellate scrutiny, especially when Congress has seen fit to list specific factors a court must weigh in its sentencing decision. Thus, in order to have effective appellate review, we have held that trial courts, when ordering restitution under the VWPA, must make explicit findings of fact on those factors listed in 18 U.S.C. Sec. 3664(a). Id. at 458.
 
 
 11
 In this case, the district court made none of the required findings of fact as to the amount of loss sustained by the victim, the financial resources of the defendant, and the financial needs and earning ability of the defendant and the defendant's dependents. Yet, this case can be distinguished from Bruchey and its progeny in that the restitution order here was made pursuant to a truly voluntary plea agreement. Davis offered to pay the restitution while negotiating the plea agreement, and she did not object to it when it was so ordered by the court. As we stated in Bruchey, "Should the victim and defendant reach and offer to the district court a truly voluntary restitution agreement, it should be treated differently than it was here." 810 F.2d at 459.
 
 
 12
 Another difference between this case and Bruchey is the amount in question. While that case involved restitution of $50,000, here we are concerned with the relatively small sum of $377. While it is true that some defendants might be unable to pay back even such a nominal amount, the purpose of making findings of fact regarding ability to pay, to safeguard defendants from impossible monetary burdens, certainly decreases in importance in proportion to the amount in question.
 
 
 13
 We still hold that trial courts must make the specific findings of fact as set out by Congress in 18 U.S.C. Sec. 3664(a) when ordering restitution under the VWPA. When, though, the restitution is ordered pursuant to a truly voluntary plea agreement and the amount in question is nominal, we find that not making such findings does not constitute an abuse of discretion.
 
 III.
 
 14
 Section 3013 of Title 18 mandates that those convicted of any offense against the United States be charged a special assessment with the money going into a "Crime Victims Fund" from which grants are made to eligible state crime victim compensation programs. The amount of the assessment is controlled by the seriousness of the crime: if the defendant is an individual, the amount is $5 for an infraction or a class C misdemeanor; $10 for a class B misdemeanor; $25 for a class A misdemeanor; and $50 for a felony. 18 U.S.C. Sec. 3013(a).
 
 
 15
 In this case, while the trial court was correct in charging Davis a special assessment of $50 for her conviction of possessing stolen mail, a question arises as to the additional $50 assessment charged her for criminal contempt. Criminal contempt is neither a felony nor a misdemeanor; instead it has been described by the Supreme Court as "an offense sui generis." Cheff v. Schrackenberg, 384 U.S. 373, 380 (1966). Although a court must charge a special assessment for a criminal contempt conviction, Congress has given no indication as to what the amount should be. We find, though, that the $50 assessment charged here was not error.
 
 
 16
 Under 18 U.S.C. Sec. 3559, offenses that have not already been classified by a letter grade in their sectional definitions are assigned letter grades for sentencing purposes. These grades are assigned according to the maximum term of imprisonment authorized: if the maximum term is over one year, the offense is some sort of felony; between six months and one year, a class A misdemeanor; between thirty days and six months, a class B misdemeanor, etc. Since one could be imprisoned for more than one year on a criminal contempt conviction, the district court here equated such conviction with a felony and thus charged Davis the $50 special assessment. We find this reasoning to be sound.
 
 
 17
 Accordingly, the judgment of the district court is
 
 
 18
 AFFIRMED.