924 F.2d 1053
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dennis Dwight DANIELS, a/k/a Mark or Marc Conner(s),
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
Dennis Dwight DANIELS, a/k/a Mark, a/k/a Marc Conner(s),
Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellant,
v.
Kenneth ROYAL, a/k/a James Rollins, Defendant-Appellee.
 Nos. 90-5457, 90-5468 and 90-5469.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1990.
Decided Feb. 12, 1991.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Asheville. Richard L. Voorhees, District Judge. (CR-89-86-A-CR; CR-89-128-A)
 Stephen P. Lindsay, Moore, Lindsay & True, Asheville, N.C., for appellant.
 Robert James Conrad, Jr., Assistant United States Attorney, Charlotte, North Carolina (Argued), for appellee United States; Thomas J. Ashcraft, United States Attorney, Charlotte, N.C., for on brief.
 Janet Thomas, Charlotte, N.C., for appellee Royal.
 W.D.N.C.
 AFFIRMED.
 Before K.K. HALL and NIEMEYER, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Dennis Dwight Daniels, Kenneth Royal, and Carol Dykes were indicted in five counts for armed bank robbery and related offenses arising from their robbery on June 1, 1989, of the Branch Banking and Trust Company in Asheville, North Carolina. In accordance with the terms of a plea agreement, Daniels pleaded guilty to one count of armed bank robbery with the use of a firearm and the government dismissed the remaining counts. In the plea agreement Daniels agreed to cooperate and to testify truthfully against the other defendants; to pay restitution of all or part of the $85,000 stolen; and to forfeit money, jewelry and other items seized during the course of the investigation. The government agreed that Daniels was entitled to receive a two-level downward departure at sentencing for his acceptance of responsibility and that he would receive a sentence of no more than 20 years. The agreement further provided that at sentencing the government would "present all pertinent background information and evidence obtained during the investigation of these matters" for establishing the factual basis for the guilty plea. J.A. 11. Thereafter in accordance with the agreement, Daniels cooperated with F.B.I. Special Agent John N. Quigley and discussed each defendant's role in the robbery, including his own.
 
 
 2
 At sentencing the district judge (1) granted Daniels a downward departure of two levels for acceptance of responsibility; (2) granted the government's motion for enhancement of the offense level by two levels because of Daniels' role in the robbery as revealed, in part, by his own cooperation with Agent Quigley; (3) denied the government's motion to enhance by an additional two levels because of the unlawful physical restraint of the bank manager; and (4) denied the government's motion to increase Daniels' criminal history by two points because of a juvenile conviction. The court also denied a motion of the government for a two-level enhancement of the offense level of the defendant Royal because of his participation in the unlawful restraint of the bank manager. Daniels was sentenced to 157 months and ordered to pay $19,671.74 in restitution.
 
 
 3
 Daniels appeals the rulings of the district court in increasing his offense level by two levels based on evidence given by him in cooperating with the government and in ordering him to pay restitution without a finding of an ability to pay. The government cross-appeals the court's rulings in refusing to enhance the offense levels of both Daniels and Royal because of their physical restraint of the bank manager and in refusing to increase Daniels' criminal history category.
 
 
 4
 Finding no reversible error, we affirm.
 
 
 5
 * Daniels argues that information given by him while cooperating in accordance with the plea agreement was improperly used to enhance his offense level. He notes that in order to get a two-level reduction for cooperation, he incurred a two-level enhancement. While we appreciate the unproductive aspect of a plea agreement that permits this, nothing in the plea agreement provided that the information Daniels gave could not be used. On the contrary, one paragraph provides that the government would be entitled to "present all pertinent background information and evidence obtained during the investigation of these matters" for purposes of establishing the factual basis of the guilty plea. J.A. 11. If it were the intent of the parties that statements made by Daniels during his cooperation could not be used at sentencing, the plea agreement could have so specified. See U.S.S.G. Sec. 1B1.8(a), which provides:
 
 
 6
 Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.
 
 
 7
 (Emphasis added.)
 
 
 8
 Daniels contends that the use of information given by him while cooperating in accordance with the plea agreement is "inherently unfair" and will have a "chilling effect on future plea negotiations." He points out that cooperation will be "hard to come by, for no defendant is going to trade cooperation for additional punishment." Brief of Appellant at 10. We agree that a plea agreement which allows the government to use information obtained during cooperation, as this one does, might have a chilling effect. We cannot agree, however, that it is inherently unfair when it legally permits use of information obtained by cooperation. It would seem obvious that agreements for cooperation should provide a more secure benefit to the defendant, but that is a matter for consideration by the parties, and not the court.
 
 
 9
 On a review of the facts considered by the district court on the issue of whether the defendant was "an organizer, leader, manager, or supervisor" of the criminal activity, see U.S.S.G. Sec. 3B1.1(c), we conclude that the court was not clearly erroneous by imposing a two-level enhancement because of Daniels' role in the offense. In the course of several bank robberies Daniels was the participant in each case who actually took the money; he commandeered the teller area and was perceived to be in charge; he purchased the getaway automobile; and he was the one who rented the room in Asheville on behalf of the group. While this alone may have supported the district court's findings, Daniels' own statements that he was in charge, that he made the final decision of which bank to rob, and that he issued the orders during the course of the robberies confirmed his leadership role.
 
 II
 
 10
 After the district court imposed sentence, which included an order of restitution, counsel for Daniels objected on the grounds that there were no findings, or evidence to support findings, that Daniels had an ability to pay the restitution ordered. The presentence report showed that Daniels had no assets. He argues that therefore the restitution was improperly ordered, citing to United States v. Bruchey, 810 F.2d 456 (4th Cir.1987).
 
 
 11
 The government contends that indigency is not a bar to an order of restitution because the defendant's financial condition could well change in the future. Noting that the district judge made specific findings about the total amount of restitution to be made and the amount to be assessed to each party, the government argues that Bruchey was substantially complied with; more detailed findings were unnecessary; and any failure to make more detailed findings on the ability to pay was harmless. The government notes that the presentence report concluded that Daniels' period of incarceration could be used to develop job skills which would enhance his ability to be employed upon completion of his sentence and that he had been employed as an apprentice funeral director and mortician, earning a salary of $1,000 per month.
 
 
 12
 In determining whether to order restitution, a court must consider several factors, including the amount of the loss sustained, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as it finds appropriate. 18 U.S.C. Sec. 3664(a). If a dispute develops in connection with any of these issues, then the court is called upon to resolve the issue by applying a preponderance-of-the-evidence standard. The burden of proving the amount of loss subject to restitution is on the government, and the burden of demonstrating the absence of financial resources and other needs of the defendant is on the defendant. 18 U.S.C. Sec. 3664(d).
 
 
 13
 In this case, the presentence report made a recommendation for restitution and noted factors relating to the defendant's ability to pay, such as his potential to develop a vocational skill while incarcerated and his past employment. No objection was made by Daniels to create a dispute and no further findings were therefore made by the district judge, except to determine the amount of restitution and to apportion it among the defendants. It was not until after sentence was imposed that the defendant objected. In these circumstances we do not find that error was committed by the court in addressing the issue of restitution in the manner that it did.
 
 
 14
 It is significant, moreover, that Daniels expressly agreed to provide restitution as part of his plea agreement. Paragraph 3 provides in part:
 
 
 15
 The defendant and the government agree that the amount of money taken from Branch Banking and Trust is $85,938.03. The defendant [Daniels] and the United States agree that restitution shall be ordered payable to Branch Banking and Trust in the full amount of the loss, the exact amount to be borne by this defendant to be left to the discretion of the Court.
 
 
 16
 In accordance with the plea agreement, the court did make an equitable apportionment of the total loss and required Daniels to pay $19,671.74. In doing so the court did not abuse its discretion.
 
 III
 
 17
 The United States has cross-appealed, contending that the district court erred in refusing to enhance the base offense levels of both Daniels and Royal under U.S.S.G. Sec. 2B3.1(b)(4)(B) because of their unlawful physical restraint of the bank manager. The government also argues that the district judge failed to enhance the criminal history category of Daniels based on a juvenile conviction presented to the court for the first time at sentencing.
 
 
 18
 Daniels and Royal contend that the government's cross-appeal on these issues was filed untimely. They also argue that the guideline relied on by the government is not applicable, because the use of a gun by Daniels and Royal was already taken into account in the base offense level for armed bank robbery.
 
 
 19
 On the timeliness-of-appeal issue, the defendants argue that since Royal was sentenced on January 3, 1990, and Daniels on January 4, 1990, the government's notice of appeal filed on February 16, 1990, was late because it was more than 30 days after sentencing. Rule 4(b), F.R.A.P., provides in pertinent part:
 
 
 20
 When an appeal by the government is authorized by statute, the notice of appeal shall be filed in the district court within 30 days after the entry of (i) the judgment or order appealed from or (ii) a notice of appeal by any defendant. A judgment or order is entered within the meaning of this subdivision when it is entered in the criminal docket.
 
 
 21
 While the notice of appeal was filed more than 30 days after Daniels and Royal were sentenced, the rule provides that the date from which the statute runs is the date of the entry of judgment or the date on which the defendant noticed an appeal. The use of either date makes the appeal timely in this case. Judgment was not entered on the docket until January 19, 1990 (J.A. 4), and while defendant's notice of appeal was earlier, having been filed prematurely (before judgment), it is considered filed as of the date of judgment. See F.R.A.P. 4(a)(2). Accordingly the appeal was timely.
 
 
 22
 On the government's point that the offense level should be enhanced, the government cites to U.S.S.G. Sec. 2B3.1(b)(4)(B), which provides that in a robbery "if any person was physically restrained to facilitate commission of the offense or to facilitate escape," the base offense level must be increased by two levels. According to note 1(i) to U.S.S.G. Sec. 1B1.1, " 'Physically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked up." Since this issue involves an application of the Guidelines to the facts, we review under the due deference standard set forth in 18 U.S.C. Sec. 3742(e). See United States v. Daughtrey, 874 F.2d 213, 214 (4th Cir.1989). Under the due deference standard, "the court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. Sec. 3742(e).
 
 
 23
 At the time the district court denied the government's motion for the enhancement for physical restraint it had before it the recommendation of the probation officer to deny the motion. J.A. 207. According to the probation officer, "[b]ased on the information I have, the only evidence of restraint seems to be perhaps a brief period where [the bank manager] Mr. Whiteside was being dragged across the floor by Royal." Id. Assuming the court found the facts in the probation officer's report to be true, and giving due deference to the district court on the application of the Guidelines to these facts, we cannot say that the court's decision to deny the motion for enhancement was reversible error.
 
 
 24
 Finally, the government argues that the district court erred in refusing to add two points to the criminal history of Daniels for a juvenile conviction of at least 60 days where he was released from confinement within five years of the commission of the offenses at issue here. The facts supporting this adjustment were revealed only in an addendum to the presentence report which had not been provided to Daniels before sentencing. Daniels objected to the increase, arguing that, without a copy of the addendum in advance, he was not given an adequate opportunity to prepare an argument against the recommended increase. The district court sustained the objection without comment. J.A. 58. In view of the circumstances and lack of notice given to the defendant, we conclude that the ruling was not clearly erroneous. See U.S.S.G. Sec. 6A1.3(a).
 
 
 25
 For the reasons given the judgments of the district court are affirmed.
 
 
 26
 AFFIRMED.