23 F.3d 404
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Daniel V. LANE, Defendant-Appellant.
 No. 93-5085.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 7, 1994.
Decided May 23, 1994.
 
 1
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. Robert Earl Maxwell, Chief District Judge. (CR-92-32)
 
 
 2
 Rocco E. Mazzei, Clarksburg, WV, for appellant.
 
 
 3
 Rita R. Valdrini, Asst. U.S. Atty., Wheeling, WV, for appellee.
 
 
 4
 William A. Kolibash, U.S. Atty., Wheeling, WV, for appellee.
 
 
 5
 N.D.W.Va.
 
 
 6
 AFFIRMED IN PART AND VACATED AND REMANDED IN PART.
 
 
 7
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 OPINION
 PER CURIAM
 
 8
 Daniel Lane was an attorney with a solo practice in Salem, West Virginia. In 1988, because he was having difficulty making payments on three bank loans, he began to defraud his clients by settling their personal injury claims without telling them and using the proceeds himself, as well as using money which clients had given him to pay their taxes. Some claims and lawsuits were never filed by Lane, although he accepted retainers and told the clients he had filed such claims or lawsuits. Through various schemes such as the creation of false court records and documents and false tax payment documents, Lane succeeded in concealing his behavior from his clients for a while, carrying on the fraud from 1988 to 1991. When his fraud was uncovered, Lane's law license was suspended and charges were filed against him in West Virginia state court.
 
 
 9
 In 1992, Lane entered a guilty plea in federal court to a one-count information charging mail fraud. As part of his plea agreement, fifteen cases pending in state court were dismissed with prejudice. Lane stipulated that he had defrauded thirty clients of approximately $254,778. The total amount of loss was eventually determined by the court to be $269,102.
 
 
 10
 The recommended offense level, with an adjustment for acceptance of responsibility, was sixteen; Lane had no criminal history apart from the numerous charges growing out of the cases which were dismissed in state court. His recommended guideline range was 21-27 months.
 
 
 11
 In the restitution section of the presentence report, the probation officer stated that the amount of loss stipulated in the plea agreement did not include all losses suffered by Lane's victims, so that the amount of restitution due might exceed $254,000. Lane objected to the suggestion that he make restitution in any amount, citing the need for findings pursuant to United States v. Bruchey, 810 F.2d 456 (4th Cir.1987), concerning his ability to pay, the needs of his dependents, and so forth. The probation officer responded that Lane's intelligence and education suggested that he would have good earning potential once he finished his prison term (even though he could no longer practice law), and that he could also contribute some payments from his earnings in prison.
 
 
 12
 At the first sentencing hearing on July 14, 1992, the district court gave notice that it was considering a departure upward to the statutory maximum of sixty months. It deferred the imposition of a sentence, but heard a report on Lane's misconduct from the West Virginia Bar Counsel, Sherry Goodman, and a report from Peter Conley, who had been appointed by the state court to take over Lane's files in an effort to protect his clients' interests. Goodman informed the court that, even after Lane knew he was being investigated, he assured clients that the matter would blow over, and continued to collect retainer fees.
 
 
 13
 The court also heard from the state prosecutor who had agreed to drop state charges in favor of the federal prosecution. The court noted that in addition to dollar amounts lost, some of Lane's former clients had lost their right to pursue their claims because the statute of limitations had run, and that many had lost their trust in lawyers and in the legal system. A number of Lane's victims were present at the district court's invitation and described their experiences. Sentencing was then continued. In a subsequent order, the court explained that an upward departure was necessary because Lane's offense was broader than mail fraud, and his plea allowed him to avoid prosecution for multiple state felonies. The guideline sentence, in the district court's view, inadequately reflected the seriousness of the offense. The court also observed that it was required to make specific findings regarding restitution under Bruchey and invited the parties to develop the necessary facts at the next hearing.
 
 
 14
 The government took a neutral stance on the departure in its response. Lane responded that all the aggravating circumstances identified by the court had been adequately considered by the Sentencing Commission, i.e., amount of loss, abuse of a position of private or public trust, and specific skills used. He alleged that the number of victims was not significant because separate substantive counts would have been grouped, and that a departure on the basis of the benefit he received from his plea bargain was not justifiable.
 
 
 15
 At the second sentencing hearing, the district court made the following findings:
 
 
 16
 (1)The amount of loss stipulated was inadequate because, had some of Lane's clients gone to trial, they might have recovered more than was paid in settlement; some claims were lost entirely by the running of the statute of limitations; and the offense caused a loss of confidence in an important institution, the legal system. The district court cited U.S.S.G. Sec. 2F1.1, comment. (n.10), which suggests that an upward departure may be warranted in such a case;
 
 
 17
 (2)The offense involved both more than minimal planning and a scheme to defraud more than one victim, and the two-level enhancement available for either under U.S.S.G. Sec. 2F1.1(b)(2) was inadequate;
 
 
 18
 (3)Some of Lane's clients were vulnerable victims;
 
 
 19
 (4)Lane abused a position of both private and public trust, and also used his special skills to commit the offense, making the enhancement available under U.S.S.G. Sec. 3B1.3 inadequate;
 
 
 20
 (5)Lane's plea agreement enabled him to avoid prosecution for numerous state felonies such as theft, embezzlement, larceny, conversion, and forgery, and as a result the guideline sentence understated the seriousness of his offense, and failed to provide a just punishment and an adequate deterrent to others, or to promote respect for the law.
 
 
 21
 Lane did not offer further argument on the issue of a departure, or present any evidence concerning his ability to make restitution. In his statement to the court, Lane volunteered to make restitution to his victims. Finding the case an atypical mail fraud offense, the district court sentenced Lane to a term of sixty months, and imposed restitution of $269,102 without making findings pursuant to Bruchey, 810 F.2d at 458.
 
 
 22
 On appeal, Lane contests the departure and the court's failure to make the Bruchey findings. He also alleges that he was denied the right of confrontation at sentencing.
 
 
 23
 We have determined that the only issue in need of exploration is the question of whether the duty of restitution was properly imposed. The district judge on all other issues was not in error. United States v. Lane, W.Va. # 92-00032 (Jan. 13, 1993). On the matter of restitution, however, the result reached by the district court is untenable under applicable precedent, so we have found necessary vacation of the restitution order and remand for proceedings consistent with the requirements of Bruchey.
 
 
 24
 The government has argued that the restitution order should be upheld because the district judge "adopted the factual findings of the presentence report and, on that basis, appropriately ordered the Appellant to make full restitution." The argument has also been made that Lane's volunteering to pay restitution obviated the need for the district court to make findings under Bruchey. Both contentions are, however, flawed.
 
 
 25
 In United States v. Bruchey, we have held that, before ordering restitution under 18 U.S.C. Sec. 3664(a) (The Victim and Witness Protection Act), the district court must first list and address factors concerning: 1) the amount of loss suffered by any victim as a result of the offense; 2) the financial resources of the defendant; 3) the financial needs and earning ability of the defendant and the defendant's dependents; and 4) such other factors as the court deems appropriate. Bruchey, 810 F.2d at 458. Thus, a district court must "balance the victim's interest in compensation against the financial resources and circumstances of the defendant...." Id. Moreover, "[i]n order to assure effective appellate review of restitution orders, this circuit requires sentencing courts to make specific, explicit findings of fact on each of the factors set forth...." United States v. Molen, 9 F.3d 1084, 1086 (4th Cir.1993) (citing Bruchey, 810 F.2d at 458; United States v. Plumley, 993 F.2d 1140, 1142-43 (4th Cir.1993) (per curiam), cert. denied, 114 S.Ct. 279 (1993); United States v. Piche, 981 F.2d 706, 718 (4th Cir.1992), cert. denied, 113 S.Ct. 2356 (1993); United States v. Bailey, 975 F.2d 1028, 1031 (4th Cir.1992)). "Further, these findings of fact must key a defendant's financial resources, financial needs, and earning ability to the type and amount of restitution." Id. (citing Bruchey, 810 F.2d at 459). "Also, the district court 'must make a factual determination that the defendant can feasibly comply with the order without undue hardship to himself or his dependents.' " Id. (quoting Bailey, 975 F.2d at 1032).*
 
 
 26
 While it would be tempting to do nothing which may assist a lawyer who so violated his responsibility to the profession he practices, it should not be ignored that the public interest in not unreasonably and unnecessarily burdening the bankruptcy courts and in aiding, not frustrating, a criminal's rehabilitation are obvious objectives of the Bruchey case.
 
 
 27
 The district court, in deciding whether to award restitution, may satisfy the Bruchey requirements by "adopting a presentence report that recites adequate recommended factual findings." Molen, 9 F.3d at 1086; see also, United States v. Gresham, 964 F.2d 1426, 1431 (4th Cir.1992).
 
 
 28
 The government has argued that the district court here adopted the presentence report, and, consequently, made adequate findings. The presentence report contained only the following relevant observations:
 
 
 29
 The appellant had a negative net worth and, at the time of sentencing, was unemployed.
 
 
 30
 The presentence report further stated that the appellant had a solid educational background which positively reflected on his potential earning ability following incarceration.
 
 
 31
 Additionally, the following was adduced during district court proceedings:
 
 
 32
 The appellant advised the court that his home was under foreclosure proceedings although the appellant's wife [from whom he apparently is now separated] was employed.
 
 
 33
 At the July 14, 1992 sentencing hearing, the court admitted the possibility that the appellant would not in the future be able to raise sufficient funds to satisfy a restitution order of a quarter of a million dollars.
 
 
 34
 The district court prohibited the appellant from engaging in the practice of law.
 
 
 35
 The appellant admitted to the court that he had a productive future ahead of him and that he intended to "make whole" the victims of his fraud.
 
 
 36
 The government's argument seeking to uphold the order of restitution must fail on two grounds. First, it is nowhere clear from the record that the district court actually did adopt the factual findings of the presentence report with respect to restitution. Certainly, there was no explicit adoption thereof. Second, and perhaps more important, the presentence report findings are not adequate to justify the restitution order. Even if it could be shown that the district court adopted the presentence findings, the presentence report's findings were insufficient under Bruchey to allow that adoption to satisfy the requirements of Sec. 3664(a). See Plumley, 993 F.2d at 1143; Piche, 981 F.2d at 718 (although district courts had adopted factual findings of presentence reports, presentence reports themselves were infirm, and therefore their adoption did not satisfy Bruchey requirements).
 
 
 37
 Indeed, when one combines the limited findings of the presentence report with the observations offered by the district court, one is left with the distinct impression that Lane will be unable to make restitution. More important, the presentence report's vague and unsubstantiated finding that Lane's potential earning capacity was positive, notwithstanding the loss of his law license, is inadequate to fulfill Bruchey 's requirement that there be a finding of the financial needs and earning ability of the defendant. Moreover, the record is bare with respect to the financial needs and earning ability of the defendant and the defendant's dependents.
 
 
 38
 In short, the only findings that satisfy the Bruchey requirements appear to be the findings concerning the loss to those defrauded by Lane. While such findings are necessary, they are not alone sufficient. At bottom, Bruchey commands that the district court "balance the victim's interest in compensation against the financial resources and circumstances of the defendant. ..." Bruchey, 810 F.2d at 458 (emphasis added). It appears that only half of that task was accomplished here.
 
 
 39
 The defendant's volunteering to pay, standing alone, is not enough to justify a restitution order. An affirmance on the theory that, since Lane volunteered to make restitution, the Bruchey factors need not be employed does not comply with precedent. In Bruchey itself, the defendant
 
 
 40
 insisted that she could pay ... all of the money she earned until the money was returned. The order entered by the court after this hearing did not offer any findings of fact to support the restitution order and did not specify the timing, form or amount of the restitution. The court apparently relied on the promise of the defendant to reach some sort of private agreement to repay[.]
 
 
 41
 Bruchey, 810 F.2d at 457 (emphasis added).
 
 
 42
 It appears, therefore, that we have already in Bruchey addressed the situation where a defendant volunteers to pay restitution. The Bruchey court found such a promise insufficient in the absence of specific findings by the district court.
 
 
 43
 Accordingly, we affirm all grounds of appeal with the exception of the restitution order. Since either the district court, making insufficient findings itself, did not explicitly adopt the presentence report, or, even if it did, since the presentence report itself lacked the requisite factual findings, the order for restitution must be vacated and the case remanded for a determination of restitution consistent with this opinion.
 
 
 44
 AFFIRMED IN PART AND VACATED AND REMANDED IN PART
 
 
 
 *
 There exists, as Molen has noted, a split as to how definite the findings supporting a requirement of restitution must be:
 Our requirement of specific factual findings accords with the rules adopted by other circuits. See United States v. Owens, 901 F.2d 1457, 1459-60 (8th Cir.1990); United States v. Palma, 760 F.2d 475, 480 (3d Cir.1985). We note, however, that some circuits have rejected adoption of a rule requiring district courts to make explicit factual findings on the record. See United States v. Cannizzaro, 871 F.2d 809, 810-11 (9th Cir.), cert. denied, 493 U.S. 895 (1989); United States v. Mahoney, 859 F.2d 47, 49-50 (7th Cir.1988); United States v. Purther, 823 F.2d 965, 969 (6th Cir.1987); United States v. Golomb, 811 F.2d 787, 791 (2d Cir.1987). A third group of circuits, without requiring explicit findings, does require that the record as a whole reflect that the district court considered the Sec. 3664(a) factors. See United States v. Savoie, 985 F.2d 612, 618-19 (1st Cir.1993); United States v. Hairston, 888 F.2d 1349, 1352-53 (11th Cir.1989); United States v. Patterson, 837 F.2d 182, 183-84 (5th Cir.1988). Although initially requiring specific findings, the Tenth Circuit has since stated that such findings are generally unnecessary. Compare United States v. Hill, 798 F.2d 402, 406-7 (10th Cir.1986) (requiring specific findings) with United States v. Rogat, 924 F.2d 983, 986 (10th Cir.) (not requiring specific findings), cert. denied, 499 U.S. 982 (1991).
 Id. at 1086 n. 2.