53 F.3d 329
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Dwight Dale DICKERSON, Defendant-Appellant.
 No. 94-5266.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 31, 1995.
Decided May 1, 1995.
 
 Before HAMILTON and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Dwight Dale Dickerson pled guilty to dealing in firearms without a license, 18 U.S.C.A. Sec. 922(a)(1)(A) (West Supp.1994), 18 U.S.C. Sec. 2 (1988), and was sentenced to two years imprisonment. Dickerson appeals his sentence, contending that the district court erred when it decided not to depart on the ground of diminished capacity, USSG Sec. 5K2.13, p.s.* He also claims that the court erred both in determining that he had the ability to pay restitution and in failing to determine the exact amount of restitution to be paid. We dismiss in part, vacate in part, and remand for redetermination of the amount of restitution Dickerson must pay.
 
 
 2
 Between April and August of 1993, Dwight Dale Dickerson helped his stepson, co-defendant Jessie Freeman, sell 111 stolen firearms which Freeman had stolen from United Parcel Service (UPS), where he worked. Dickerson asserted that he gave all the money to Freeman, who was having trouble supporting his family, and said Freeman told him the weapons were legally acquired. In fact, they were all shipments from RSR Wholesale Guns (RSR) to firearms dealers. Dickerson admitted selling around 50 firearms; about 27 firearms were recovered. The stolen firearms were valued at $31,235.33. The victim, RSR, had been reimbursed by UPS in the amount of $11,655.76, leaving an outstanding loss to RSR of $19,597.57. The probation officer recommended that Freeman and Dickerson together make restitution of $19,597 to RSR and restitution of $11,655 to UPS.
 
 
 3
 After setting out Dickerson's finances in detail in the presentence report, the probation officer recommended that Dickerson could pay some restitution in installments, either through the Inmate Financial
 
 
 4
 Responsibility Program or while on supervised release. Although he is illiterate, Dickerson was regularly employed at a sign-making company, and his employer told the probation officer that Dickerson could be rehired if a position was available after he served his sentence. Dickerson's wife was also employed.
 
 
 5
 Dickerson asked the district court to find that he lacked the ability to pay any restitution or, alternatively, to consider only the $19,597 still owing to RSR, deduct the value of the recovered firearms, and hold him responsible for only a third of the final sum. He also requested a downward departure for diminished capacity, citing his inability to learn to read.
 
 
 6
 Dickerson and Freeman were sentenced together. At the sentencing hearing, Freeman's attorney disputed the amount of restitution recommended by the probation officer, asserting that the value of the 27 recovered firearms had not yet been determined. The court decided that, in Freeman's case, it would impose restitution in the full amount, "subject to a determination [of the correct amount] by the probation office" after further consultation with the parties. The court stated that, if the parties and the probation officer were unable to come to an agreement, it would reconsider the matter. Neither defendant objected to this procedure.
 
 
 7
 In Dickerson's case, the district court ultimately decided that Dickerson had the ability to pay some restitution because he had some assets, and he had the ability to work upon his release. However, the court decided to make Dickerson jointly and severally liable with Freeman for only the $19,597 still owed to RSR. The court stated:
 
 
 8
 [R]estitution in the amount of $19,597.57 shall be made to RSR Wholesale Guns of North Carolina, less any amount that might be computed as already paid or not due as the Court has set forth earlier this morning. There shall be a consultation with the attorneys and with the probation office, and if it is determined any less amount is due, then that's fine and I hope there is. Payment ... [shall be made] while he is on supervised release at such time and in such amounts as the probation office may direct. Dickerson first contends that the district court wrongly determined that he had the ability to pay restitution. The district court here made the specific factual findings which are required before restitution may be imposed under 18 U.S.C.A. Sec. 3664(a) (West Supp.1994) (Victim and Witness Protection Act), and United States v. Bruchey, 810 F.2d 456, 458 (4th Cir.1987). The court's factual finding is reviewed for abuse of discretion. Bruchey, 810 F.2d at 458.
 
 
 9
 Both Dickerson and his wife were employed at the time of the offense, and there was a good chance that Dickerson would be rehired after his release. They had no small children. Although they had a mortgage, a car loan, and owed approximately $1000 on credit cards, the district court did not abuse its discretion in finding that Dickerson would be able to pay some restitution during his three-year term of supervised release.
 
 
 10
 Dickerson also argues that the district court erred in failing to determine the exact amount which he would be required to pay. We find that the court delegated this decision to the probation officer, and erred in doing so. We recently held in United States v. Johnson, --- F.3d ----, 1995 WL 85429, at * 2-3 (4th Cir. Mar. 3, 1995), that a district court may not delegate to a probation officer the final authority to determine the amount of restitution or the amount of installment payments to be made, and the timing of such payments, without retaining final authority over these decisions. The district court may ask the probation officer for recommendations concerning restitution, but must make the final decision.
 
 
 11
 In Johnson, the district court established a range of restitution (from $6000 to $35,000) and a minimum monthly payment of $100 to be made during the defendant's five-year supervised release period. In Dickerson's case, the district court determined that Dickerson would be liable for no more than $19,597, but left the determination of the actual amount, the amount of the installment payments, and the schedule of payments to the probation officer. Although the court expressed its willingness to rehear the matter if the parties had a serious disagreement with the probation officer, by its failure to make a final determination or to ask for further recommendations on restitution from the probation officer, the district court impermissibly delegated a judicial function to the probation officer. We are therefore constrained to remand the case to allow the district court to determine what amount of restitution Dickerson must pay, the amount of the installment payments, and the schedule of payment.
 
 
 12
 Dickerson also challenges the district court's finding that Dickerson does not suffer from significantly reduced mental capacity, notwithstanding his inability to learn to read, and its decision not to depart. He acknowledges our prior holding in United States v. Bayerle, 898 F.2d 28, 31 (4th Cir.), cert. denied, 498 U.S. 819 (1990), that a decision not to depart is not reviewable on appeal. Under Bayerle, this portion of the appeal must be dismissed.
 
 
 13
 Accordingly, we dismiss the portion of the appeal which contests the district court's decision not to depart. We vacate the sentence and remand the case for resentencing with respect to restitution. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 14
 DISMISSED IN PART, VACATED IN PART, AND REMANDED
 
 
 
 *
 United States Sentencing Commission, Guidelines Manual (Nov.1993)