**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Thomas L. EWING, Defendant– Appellant.**

**No. 91–5250.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 28, 1991.

Decided Feb. 20, 1992.

Thomas Norman Cochran, Asst. Federal Public Defender, Raleigh, N.C., argued, for defendant-appellant.

Benjamin H. White, Jr., Asst. U.S. Atty., Greensboro, N.C., argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER and LUTTIG, Circuit Judges, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

OPINION

WIDENER, Circuit Judge:

Thomas L. Ewing stands convicted of presenting for payment a false claim against the United States government in violation of 18 U.S.C. §§ 287 and 2. The conviction was upon a plea of guilty entered in the United States District Court for the Middle District of North Carolina pursuant to a plea agreement. Ewing now appeals from his conviction and sentence on the grounds that the district court erred

in 1) denying his pre-sentencing motion to withdraw his guilty plea; 2) finding that a sufficient factual basis existed to sustain the guilty plea; and 3) calculating the amount of the restitution order that was imposed upon him. We affirm the judgment of the district court in every respect save one. We vacate the restitution order and remand the case so that the district court may make the factual findings required by our decision in *United States v. Bruchey*, 810 F.2d 456 (4th Cir.1987).

Ewing's conviction in this case arose out of his activities as the sole owner and operator of CHEM–TLE Environmental Services, Inc. (CESI), a company involved in the business of cleaning up hazardous waste sites. In September, 1987 the United States Environmental Protection Agency (EPA) awarded CESI a contract to act as a regional hazardous waste clean-up operator. Soon thereafter CESI was designated to conduct a clean-up at a site in Lexington, Kentucky. The clean-up apparently was completed in due course.

However, upon conducting a review of CESI's billings generated by the Lexington clean-up, EPA discovered that CESI had submitted vouchers for certain expenses that had not in fact been incurred. In particular EPA found that CESI had submitted a claim in the amount of $52,567.26, which purportedly represented three months' operation of a quality assurance program. EPA initially approved this claim and paid CESI $52,016.26.[1] CESI had represented to EPA that the quality assurance program would be implemented and managed by Mr. Ken Wilcox, a qualified expert in the field of disposal of toxic wastes. EPA's investigation revealed, however, that Mr. Wilcox had declined Ewing's offer of employment, and thus CESI had not incurred any such expenses related to the quality assurance program.

The EPA further found that Ewing and CESI had submitted a false claim relating to the EPA's requirement that clean-up

contractors maintain pollution liability insurance. The EPA alleged that CESI, representing that the required insurance had been obtained, submitted bills for reimbursement to EPA in the amount of $125,-062, purportedly representing the premiums paid for that coverage. In fact, no such insurance had been obtained. The Voucher Review Board of the EPA discovered this discrepancy before the $125,062 bill was paid.

On June 25, 1990, a federal grand jury for the Middle District of North Carolina handed down a two-count indictment charging Ewing, CESI, and Ewing's business associate B.F. Rippy, Jr. with submitting false claims to the government in violation of 18 U.S.C. §§ 287 and 2. Count one of the indictment concerned the false claim related to the quality assurance program, while count two concerned the pollution liability insurance claim. Ewing thereafter entered into plea negotiations with the government, and on September 21, 1990 a plea agreement was executed.

The relevant terms of the plea agreement were as follows. Ewing agreed to enter a plea of guilty to count one of the indictment. In return, the government first agreed not to oppose a motion by Ewing to dismiss count two of the indictment. Second, the government agreed, after the court determined the applicable sentencing range under the Sentencing Guidelines, to recommend to the court that Ewing be sentenced at the low end of the range, or to a term of probation if probation was authorized under the applicable offense level.

Pursuant to this plea agreement, on October 3, 1990 Ewing appeared, with counsel, before the district court to enter a plea of guilty to count one of the indictment. The district court conducted an exhaustive colloquy with Ewing as required by Fed. R.Crim.P. 11(c) and (d). The court accepted Ewing's guilty plea at the conclusion of the

---

1. The record is unclear as to why the EPA's payment to CESI was $551 less than the amount claimed in CESI's fraudulent voucher. Also unclear is why the presentence report suggests that restitution be made in the amount of $52,567.26 rather than the $52,016.26 that EPA actually paid, and why the district court adopted the higher figure. We discuss Ewing's claims regarding the restitution order at part III, *infra.*

Rule 11 colloquy, but chose to defer acceptance of the plea agreement pending preparation of the presentence report.

Next, also on October 3rd, the court heard testimony from Adrienne Rish, a Special Agent from the EPA's Office of Inspector General who had been assigned to investigate the allegations that led to the indictment in this case. Agent Rish testified that her investigation revealed that CESI had submitted fraudulent bills to the EPA both for the nonexistent quality assurance program expenses and for the pollution liability insurance that was never obtained. Ewing's counsel conducted a brief cross-examination which exposed no problems with Rish's testimony. After conducting his own examination of the witness, the district judge found that the plea was supported by a factual basis and that Ewing and CESI were in fact guilty of the offense charged in count one of the indictment.

On December 11, 1990, some ten weeks after the district court's acceptance of his plea and two days before his scheduled sentencing hearing, Ewing filed a *pro se* motion to withdraw his guilty plea. As grounds for withdrawal, Ewing stated that he had pleaded guilty because of government pressure brought about by his confinement before trial and the illness of a twenty-one year old daughter. He claimed that he had failed to fully understand the nature and impact of his guilty plea as it related to certain civil mistakes which the United States had made and was trying to cover up and that his counsel had rendered ineffective assistance by failing to understand those civil mistakes. He further claimed that he had been promised probation rather than a potential prison term of fifteen to twenty-one months as was recommended in the presentence report.

On December 13, 1990, the district court heard argument and testimony from Ewing on the motion to withdraw the guilty plea. The court, unmoved by Ewing's argument, held that Ewing failed to establish a fair and just reason for withdrawal of the plea under Fed.R.Crim.P. 32(d) and that, even if a valid reason had been established, the government would be substantially prejudiced by being compelled to resume prosecution of the case through trial. Thus the court denied the motion and proceeded to sentencing.

The district court's calculations under the Sentencing Guidelines yielded an offense level of twelve, which calls for a sentencing range from ten to sixteen months. Fulfilling its part of the plea agreement, the government recommended that Ewing be sentenced at the low end of the applicable range. The court accepted this recommendation and sentenced Ewing to a term of imprisonment of ten months. It dismissed count two of the indictment. In addition, the court ordered Ewing to make restitution to the EPA in the amount of $52,567.26. Ewing filed a timely notice of appeal, and we now turn to his contentions.

I

Ewing first argues that the district court erred in denying his motion to withdraw his plea of guilty. However, he does not argue that the court abused its discretion in finding no fair and just reason as required by Fed.R.Crim.P. 32(d); rather, he argues that certain sections of the United States Sentencing Guidelines require a new, less rigorous standard to govern motions for withdrawal made before the district court accepts a plea agreement.

Ewing's argument centers on U.S.S.G. §§ 6B1.1, 6B1.2, and 6B1.3. Section 6B1.1(c) requires a sentencing court to defer its decision on whether to accept a plea agreement under Fed.R.Crim.P. 11(e)(1) "until there has been an opportunity to consider the presentence report, unless a report is not required under § 6A1.1." The Guidelines take the position that the purpose of this and other requirements in the just mentioned sections is to carry out the Congressional intent that prosecutors do not use plea agreements to undermine the workings of the Sentencing Guidelines. See U.S.S.G. Ch. 6, Pt. B, intro. comment.

Ewing essentially argues that since sections 6B1.1–.3 prevent the sentencing court from accepting a plea agreement until the

court has reviewed the presentence report, the rule should be the same for a guilty plea. Until then, he argues, the court has not accepted the plea, and thus he should be able to withdraw his plea upon some showing of cause less demanding than the current fair and just reason standard. This argument must fail, however, as it is based on a misapprehension of the nature of plea agreements under Fed.R.Crim.P. 11 and the Sentencing Guidelines.

The flaw in Ewing's position is its failure to acknowledge the distinction between a plea of guilty and a plea agreement. Contrary to Ewing's contention, the district court explicitly accepted his *plea of guilty* immediately following the Rule 11 colloquy on October 3, 1990. See App. at 41 ("The Court finds that the defendant's pleas of guilty are made voluntarily, with full understanding of the nature of the charge or charges and the consequences of the pleas, and the Court accepts the individual defendant's plea of guilty to Count 1 of the indictment...."). At the same time the court announced its intention to defer acceptance of the *plea agreement* until it had an opportunity to review the presentence report. Ultimately, at the December 13, 1990 sentencing hearing, the court accepted the *plea agreement* and accordingly dismissed count two of the indictment.[2]

A brief review of the rules governing pleas and plea agreements will aid our discussion of Ewing's argument. The procedure that the district court followed with respect to Ewing's guilty plea and plea agreement was not inconsistent with the requirements of Fed.R.Crim.P. 11 and Chapter 6, Part B of the Sentencing Guidelines. Rule 11 identifies two different types of plea agreements.[3] First, in ex-

change for the defendant's entering a plea of guilty or nolo contendere to a particular offense, the government may agree to make a nonbinding recommendation to the court that a particular sentence should be imposed. Fed.R.Crim.P. 11(e)(1)(B). In Ewing's case the government's promise to recommend a sentence at the low end of the applicable Guideline range was of the 11(e)(1)(B) type.

The second type of plea agreement is defined in Fed.R.Crim.P. 11(e)(1)(A) and (e)(1)(C). Under this type of agreement the government promises "to move for dismissal of other charges" or to "agree that a specific sentence is the appropriate disposition of the case." In the instant case the government's agreement not to oppose Ewing's motion to dismiss count two of the indictment was pursuant to 11(e)(1)(A), although the language of the plea agreement does not follow precisely the language of Rule 11.

The difference between these two types of plea agreements lies in the differing treatment they receive after entry of the guilty plea. See Fed.R.Crim.P. 11(e)(2)–(4). A guilty plea accepted[4] in exchange for an 11(e)(1)(B) plea agreement may thereafter be withdrawn only upon a showing of a fair and just reason under Fed.R.Crim.P. 32(d). See Fed.R.Crim.P. 11(e)(2). Because of the finality of a plea of guilty under this type of agreement, the court is required to inform the defendant that should the government's nonbinding recommendation be rejected, "the defendant nevertheless has no right to withdraw the plea." Fed. R.Crim.P. 11(e)(2). In this case the court so informed Ewing during the Rule 11 colloquy.

---

2. There is no reason apparent to us that the district court could not have deferred acceptance of the *guilty plea* as well as the *plea agreement* until consideration of the presentence report, but this was not what was done, and we review the facts which did occur rather than those which might have. See Fed.R.Crim.P. 32(c)(1); 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* 522 (1982).

3. Rule 11(e)(1) actually sets out three types of promises that the government may make in exchange for a plea of guilty. However, be-

cause there are only two types of agreement for purposes of determining when a defendant may withdraw his plea of guilty, we shall speak in terms of two types of plea agreement. See generally *United States v. Jackson*, 563 F.2d 1145, 1147 & n. 4 (4th Cir.1977); 1 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 175.1 (1982).

4. Whether the same rule would apply to a guilty plea entered but not accepted is not a question before us.

■ Rule 11 treats pleas pursuant to the second type of agreement in a slightly different manner. If the government promises to move for dismissal of other charges or to agree that a particular sentence is the appropriate disposition of the case, then the court's decision whether to accept the agreement bears on the defendant's ability to withdraw his plea. Rule 11 explicitly provides that if the court rejects this type of agreement then the defendant must be permitted the opportunity to withdraw his plea. Fed.R.Crim.P. 11(e)(4). However, it is important to note that the rule in no way suggests that the plea of guilty may be withdrawn as a matter of right at the defendant's behest at any time after its acceptance except when a type (e)(1)(A) or (C) plea agreement is rejected by the court. Thus, once a plea of guilty is accepted by the court, the defendant is bound by his choice and may withdraw his plea only in two ways relevant here, either by showing a fair and just reason under Rule 32(d), or by withdrawing under Rule 11(e)(4) after a rejected plea agreement.[5]

Contrary to Ewing's suggestion, the Sentencing Guidelines in the context present here do not alter the fundamental operation of the foregoing rules. For our purposes the change caused by the Guidelines comes in section 6B1.1(c). That section *requires* the sentencing court to defer its decision whether to accept a plea agreement until there has been an opportunity to examine the presentence report; Rule 11 standing alone gives the court *discretion* as to whether to defer. The Sentencing Commission takes the position that this change simply reflects that under the Guidelines a presentence report will normally be prepared. See U.S.S.G. § 6B1.1, comment. (backg'd). We have no occasion here to resolve the patent conflict between the Rule and the Guideline, for the district court did not abuse its discretion in accepting the guilty plea and later approving the plea agreement as it was *permitted* to do

under the Rule and *required* to do under the Guidelines.

In sum, the district court accepted Ewing's plea on October 3, 1990. Ewing's motion to withdraw his plea was properly rejected under the standard in Fed. R.Crim.P. 32(d) on December 13, 1990. On the same day the court accepted the terms of the plea agreement and the government fully performed its obligations thereunder. Accordingly, we affirm the action of the district court in declining to permit withdrawal of the plea of guilty.

## II

■ Ewing's second claim on appeal is that his plea of guilty was not supported by a factual basis, and thus that he should be allowed to enter a new plea.

The crime to which Ewing pleaded guilty, presenting false claims to an agency of the United States, a violation of 18 U.S.C. § 287, consists of two elements: 1) making or presenting a claim to any agency of the United States 2) knowing such claim to be false, fictitious, or fraudulent. 18 U.S.C. § 287. As there is no real dispute that false claims indeed were submitted to EPA, Ewing's chief complaint here is that the evidence adduced at the Rule 11 hearing and at his sentencing hearing was insufficient to establish the requisite fraudulent intent on his part. We disagree.

We are satisfied that the district court was presented with ample evidence from which it reasonably could infer that Ewing acted with fraudulent intent. As we have noted, Special Agent Rish testified unequivocally that CESI had billed EPA for claims that had not been incurred, and that Ewing had personally approved the submission of the fraudulent bills. Rish further testified that Ewing's co-defendant, Rippy, had informed her that Ewing was aware that these expenses were not legitimate but nevertheless, in the case of the Wilcox

---

**5.** Ewing argues that *United States v. Livingston,* 941 F.2d 431, 436 (6th Cir.1991), is authority for his position that pleas of guilty are not effective and binding until the district court has accepted an accompanying plea agreement. The *Livingston* case is inapposite, however, as it stands only for the proposition that a district court is not bound by the terms of a plea agreement until that agreement has been accepted by the court. The case in no way suggests that a plea of guilty may be freely withdrawn prior to the court's acceptance of a plea agreement.

invoice, told Rippy to submit them for payment "because [Ewing] wanted extra profit margin."

Proof of scienter, like any mental state, necessarily must be by the introduction of evidence from which the factfinder may by inference arrive at the desired finding. Were we to institute a requirement that all such subjective mental states be proved by direct evidence or uncontroverted, unrecanted confessions of guilt, then most such guilty pleas would be subject to withdrawal on factual basis grounds any time a defendant experienced a change of heart on the extent of his culpability or on the wisdom of his plea. This we decline to do. In sum, we hold that the district court correctly found the requisite factual basis for Ewing's plea of guilty.

### III

Ewing's final claim of error concerns the restitution order that the district court imposed upon him. That order was in the amount of $52,567.26, which was the figure arrived at by the probation officer and the amount of the voucher submitted by CESI for the quality assurance program charges. Ewing now argues that this amount is excessive in that it includes payments made to CESI by EPA for work that was in fact performed. Additionally, it appears that EPA actually paid CESI some $551 less than the amount requested in the voucher; no explanation for this disparity is offered by either party. See note 1, *supra.*

In view of the government's concession that the restitution order should be vacated and the case remanded so that the district court may make the factual findings required by 18 U.S.C. § 3664(a) and our decision in *United States v. Bruchey*, 810 F.2d 456 (4th Cir.1987),[6] we will remand the question of the extent of restitution. We intimate no opinion that the amount initially found was incorrect.

The record confirms that the district court did not make the findings required by *Bruchey* before imposing the order of restitution in this case. So, in light of the

government's concession, we vacate the restitution order and remand so that the district court may make the necessary findings and again order restitution in an amount it deems appropriate. Accordingly, the judgment of the district court is

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

---

**6.** At the time of the *Bruchey* decision the statute authorizing restitution orders was codified at 18 U.S.C. § 3580. That section was renumbered by

the Sentencing Reform Act of 1984, Pub.L. No. 98–473 § 211, 98 Stat.1987, as 18 U.S.C. § 3664.