**REVISED**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**
_____

No. 96-10981
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

WALTER V. GRANT, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Northern District of Texas
_____

July 9, 1997

Before DAVIS, STEWART, and PARKER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Walter V. Grant Jr. appeals the district court's denial of his motion to withdraw his guilty plea to a tax evasion charge. We affirm.

I.

Grant, a Dallas, Texas, minister under investigation by the IRS for suspected tax evasion, entered into a plea agreement with the government. Pursuant to the agreement, Grant pleaded guilty to one count of filing a false 1990 tax return, in violation of 26 U.S.C. § 7206(1). At a plea hearing on April 15, 1996, the district court placed Grant under oath and questioned him as

1

required by Fed. R. Crim. P. 11. Grant stated that he understood the nature of the charge against him and the consequences of pleading guilty, including the possibility of 10 months to 16 months imprisonment. He also stipulated to the substantive facts underlying the charge. The court found that the plea was made "knowingly, freely, and voluntarily" and the plea was entered, but the court deferred accepting Grant's plea and the plea agreement until it reviewed the presentence report and an incriminating videotape made by the IRS.

On July 22, 1996, the scheduled date of sentencing, Grant moved to withdraw his plea of guilty, claiming that he was innocent of the tax evasion charge. After an evidentiary hearing, the district court denied Grant's motion to withdraw his plea and accepted the plea and the plea agreement.[1] Grant was sentenced to 16 months imprisonment and one year of supervised release and ordered to pay fines totaling $60,812.88. In conjunction with his supervised release, the court imposed 100 hours of community service and required Grant to disclose information relating to his financial status on a weekly basis. The court also required Grant to publish notice of the offense in a publication of Grant's evangelistic association. However, on April 2, 1997, the district court entered an amended judgment deleting the notification requirement.

---

[1]Brenda Grant, Walter Grant's wife, pleaded guilty to one count of misprision of a felony, in violation of 18 U.S.C. § 4. The district court permitted Brenda Grant to withdraw her guilty plea, noting that it had intended to reject her plea agreement. Brenda Grant was subsequently tried and acquitted.

Grant appeals the district court's denial of his motion to withdraw his plea as well as the conditions of his supervised release.

## II.

### A.

Under Rule 32(e) of the Federal Rules of Criminal Procedure, the district court may grant a motion to withdraw a guilty plea before a defendant is sentenced if the defendant shows "any fair and just reason." The denial of a Rule 32(e) motion is reviewed for abuse of discretion. United States v. Henderson, 72 F.3d 463, 465 (5th Cir. 1995).

There is no absolute right to withdraw a guilty plea. United States v. Badger, 925 F.2d 101, 103 (5th Cir. 1991). In reviewing the denial of a motion to withdraw a guilty plea under Rule 32(e), this court traditionally considers seven relevant factors: (1) whether the defendant asserted his innocence, (2) whether withdrawal would prejudice the government, (3) whether the defendant delayed in filing the withdrawal motion, (4) whether withdrawal would inconvenience the court, (5) whether adequate assistance of counsel was available, (6) whether the plea was knowing and voluntary, and (7) whether withdrawal would waste judicial resources. United States v. Carr, 740 F.2d 339, 343-44 (5th Cir. 1984), *cert. denied*, 471 U.S. 1004 (1985). The district court makes its determination based on a totality of circumstances. Id. at 344.

To support his motion, Grant asserted that he was innocent of

3

the charge against him.  He cited no specific facts; instead, he simply stated that "down deep I've always felt I was innocent. . . . And I can't in good conscience stand up here and say that I'm guilty if I feel in my heart that I'm innocent."  This claim of innocence, standing alone, does not justify withdrawal.  United States v. Rojas, 898 F.2d 40, 43 (5th Cir. 1990).  And, as the district court noted, the remaining Carr factors support the denial of Grant's motion.  Grant delayed more than three months before filing his eleventh-hour motion; during that time, he gave no indication to the court that he was considering withdrawing his plea.  *See* Carr, 740 F.2d at 345 (concluding that defendant's filing of motion 22 days after plea was entered was untimely).  By the day of sentencing, the court had reviewed the presentence report, voluminous objections, responses to those objections, and various materials submitted by Grant.  Plea withdrawal would have disrupted the trial docket, inconveniencing the court and wasting additional judicial resources.  After reviewing the record, we cannot conclude that, under the Carr test, the district court abused its discretion in denying Grant's motion.

However, Grant contends that application of the Carr test is inappropriate.  In Carr, the defendant sought to withdraw a guilty plea that had already been accepted.  Here, in contrast, the district court deferred acceptance of both the plea and the plea agreement until it reviewed the presentence report.  Grant argues that because the plea had not been accepted, it could be withdrawn at any time by either party.

4

At the outset, we note that neither Rule 32(e), which governs plea withdrawal, nor Rule 11, which governs plea agreements generally, indicates whether a plea must be accepted, rather than merely entered, before the "fair and just reason" standard applies.[2] Nor has any court spoken clearly on this issue. *See* United States v. Washman, 66 F.3d 210, 212 (9th Cir. 1995) (stating that a defendant should be allowed to withdraw a plea without offering any reason when plea has not been accepted); United States v. Ewing, 957 F.2d 115, 118 n.2 (4th Cir.) (noting, in dicta, that "[t]here is no reason apparent to us that the district court could not have deferred acceptance of the *guilty plea* as well as the *plea agreement* until consideration of the presentence report"), *cert. denied*, 505 U.S. 1210 (1992).[3] However, after reviewing relevant case law and the language of pertinent rules, we conclude that Rule 32(e)'s "fair and just reason" standard was triggered upon entry of Grant's plea and that Grant failed to satisfy that standard.

This court and others have considered an analogous question: whether a plea may be withdrawn as a matter of right *after* its acceptance by the court but *before* acceptance of the plea agreement. In United States v. Hyde, 117 S. Ct. 1630 (1997), the Supreme Court, resolving a circuit split, applied Rule 32(e)'s

_____

[2]Rule 32(e) provides:
If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason.

[3]The Ninth Circuit's reasoning in Washman has been called into question by the Supreme Court's decision in United States v. Hyde, 117 S. Ct. 1630 (1997), discussed below.

5

"fair and just reason" standard to a defendant's attempt to withdraw his accepted plea before acceptance of the plea agreement. The Ninth Circuit had held that the defendant had an absolute right to withdraw his guilty plea before the district court accepted the plea agreement. United States v. Hyde, 92 F.3d 779, 781 (9th Cir. 1996), *rev'd*, 117 S. Ct. 1630 (1997). It reasoned that by deferring its decision on whether to accept the plea agreement, the district court automatically deferred accepting the guilty plea because the guilty plea and plea agreement are "'inextricably bound up together.'" Id. at 780 (citation omitted).

In reversing, the Supreme Court first examined the language of Rule 11 and concluded that, by its terms, the rule distinguished between pleas and plea agreements. By failing to acknowledge those distinctions, the Court reasoned, the Ninth Circuit stripped Rule 11 of its intended effect. Hyde, 117 S. Ct. at 1634. Second, the Court noted that the appellate decision rendered the Rule 11 plea hearing inconsequential:

> After the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea, the Court of Appeals would allow the defendant to withdraw his guilty plea simply on a lark. . . . We think the Court of Appeals' holding would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess.

Id. The Court ultimately held that when the district court has accepted a defendant's plea but deferred accepting the plea agreement, the plea may not be withdrawn unless the defendant

6

provides a "fair and just reason" under Rule 32(e).[4]  *See also* Ewing, 957 F.2d at 118; United States v. Ellison, 798 F.2d 1102, 1104 (7th Cir. 1986).

We believe that the Supreme Court's reasoning in Hyde applies with equal force here.  At the Rule 11 plea colloquy, Grant was questioned under oath about his understanding of the charge and the facts underlying it.  Grant stated that he understood the consequences of pleading guilty, admitted that he had understated his income on his 1990 federal tax return in violation of 26 U.S.C. § 7206(1), and pleaded guilty.  Responding to the district court's questioning as to the voluntariness of his plea, Grant repeatedly acknowledged his guilt.  In conducting this questioning, the district court meticulously satisfied its obligations under Rule 11.  Allowing Grant to withdraw his plea without a fair and just reason would defeat the purpose of the plea hearing and diminish the significance of entering pleas.  As the Supreme Court explained, such a result is contrary to Rule 11's intended purpose:

> 'Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim.  In fact, however, a guilty plea is no such trifle, but a "grave and solemn act," which is "accepted only with care and discernment."'

---

[4]In United States v. Ocanas, 628 F.2d 353, 358 (5th Cir. 1980), *cert. denied*, 451 U.S. 984 (1981), we held that either party to a plea agreement could modify its position until the plea and plea bargain were accepted by the court.  This reasoning is contrary to our decision in United States v. Foy, 28 F.3d 464 (5th Cir.), *cert. denied*, 513 U.S. 1031 (1994), discussed below, and, more importantly, it is undermined by the Supreme Court's decision in Hyde.

<u>Hyde</u>, 117 S. Ct. at 1634 (citations omitted).

Grant's position is undermined further by case law characterizing the acceptance of a plea as provisional in nature when the plea is accepted before the plea agreement. In deferring consideration of the plea agreement, the district court acted pursuant to § 6B1.1(c) of the Sentencing Guidelines, which requires a sentencing court to defer its decision on whether to accept a plea agreement under Fed. R. Crim. P. 11(e)(1) "until there has been an opportunity to consider the presentence report." We examined § 6B1.1(c) in <u>United States v. Foy</u>, 28 F.3d 464 (5th Cir.), *cert. denied*, 513 U.S. 1031 (1994); there, the district court accepted a plea but later rejected the plea agreement after reviewing the presentence report. This court concluded that, under § 6B1.1(c), a district court's acceptance of a guilty plea is contingent upon the court's review of the presentence report and, therefore, that the court's denial of the defendant's motion to withdraw his guilty plea was proper. <u>Id.</u> at 471. Notably, however, in <u>Foy</u>, we advised district courts that "the better practice would certainly be for the district court to expressly point out at the Rule 11 hearing that although the plea met all the requirements for acceptance . . . and was provisionally accepted, final acceptance was contingent on the court's review of the PSR." <u>Id.</u> The district court here acted pursuant to our recommendation in <u>Foy</u>; it expressly found that all of the Rule 11 requirements were present and deferred its acceptance of the plea until it reviewed the presentence report. We can see no practical

8

distinction between accepting a plea provisionally until a presentence report has been reviewed and deferring acceptance of a defendant's plea for the same reason.

In sum, we conclude that the "fair and just reason" standard is properly applied when the defendant agreed to a plea agreement and entered a plea pursuant to that agreement and Rule 11. Because Grant entered his plea knowingly, freely, and voluntarily and because he failed to supply a fair and just reason for withdrawing the plea, the district court's denial of his motion to withdraw his plea was not an abuse of discretion.[5]

---

[5]Under Rule 11, there are three types of plea agreements. Under Rule 11(e)(1)(A), the government promises to move for dismissal of other charges. Under Rule 11(e)(1)(B), the government may agree to recommend that a particular sentence be imposed if the defendant enters a plea of guilty, with the understanding that such a recommendation is not binding on the court. "If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request *the defendant nevertheless has no right to withdraw the plea*." Fed. R. Crim. P. 11(e)(2) (emphasis added). Finally, under Rule 11(e)(1)(C), the government agrees that the defendant should receive a specific sentence.

If the court rejects an (A)- or (C)-type agreement, the defendant must be allowed to withdraw his plea. However, in a (B)-type agreement, "there is no `disposition provided for' . . . so as to make the acceptance provisions of subdivision (e)(3) applicable, nor is there a need for rejection with opportunity for withdrawal under subdivision (e)(4) in light of the fact that the defendant knew the nonbinding character of the recommendation or request." Fed. R. Crim. P. 11 advisory committee's note; *see also* United States v. Clark, 931 F.2d 292, 296 (5th Cir. 1991).

Here, the nature of the plea agreement is a matter of some confusion. The district court apparently viewed the plea agreement as a (C)-type agreement and stated at the Rule 11 plea colloquy that "this being an 11(e)(1)(C) plea agreement, the Court is going to defer acceptance of each of your pleas of guilt until a presentence investigation is conducted and I have a chance to review that." While the agreement governing Grant's wife, Brenda Grant, was a (C)-type agreement, Grant's agreement provided that "the court is not bound by the parties' calculations of the probable offense level, and that the court could determine that the

9

B.

Grant also challenges the court's financial disclosure requirement. During Grant's one-year supervised release, the court's sentencing order requires him to:

> disclose to the probation office on at least a weekly basis, all information and documentation relating to any monetary or financial transaction, both business and personal, in which the defendant, any affiliated entity, or any person representing the defendant or affiliated entity participates. The defendant shall disclose all documents and/or agreements which may affect the defendant's financial condition, both personal and business. The Court shall be informed weekly of all money coming in, its source (in detail) and where it is spent, in detail.

Grant contends that this requirement offends his free exercise of religion under the First Amendment.[6]

---

appropriate offense level is higher or lower than the parties' estimates." However, Grant's agreement also included a guaranteed guideline range--10 months to 16 months--and provided that Grant could withdraw his plea if the court determined that the sentencing level was higher than 12, thus requiring a more stringent sentence. Therefore, the agreement has elements of both (B)- and (C)-type agreements.

For our purposes, however, this is immaterial because our reasoning applies to all three types of agreements. Regardless of the type of agreement at issue, the district court usually must review the presentence report before accepting the agreement. *See* U.S.S.G. § 6B1.1 ("The court shall defer its decision to accept or reject any nonbinding recommendation pursuant to Rule (e)(1)(B), and the court's decision to accept or reject any plea agreement pursuant to Rules 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the presentence report, unless a report is not required under § 6A1.1."). Any acceptance of the plea before a review of the presentence report is at most a provisional acceptance. Thus, the court's decision to defer acceptance of a plea, regardless of the type of plea agreement presented, is of no consequence.

[6]Grant also contends that this requirement violates the Religious Freedom Restoration Act (RFRA). The Supreme Court's decision in City of Boerne v. Flores, 1997 WL 345322 (June 25, 1997), striking down RFRA as it applies to state and local governments, arguably casts some doubt on the continued viability of that legislation in the federal context. We need not address

10

The court acted pursuant to § 5D1.3 of the Sentencing Guidelines. Under that provision:

> The court may impose other conditions of supervised release, to the extent that such conditions are reasonably related to (1) the nature and circumstances of the offense and the history and characteristics of the defendant, and (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

U.S.S.G. § 5D1.3(b). Section 5D1.3(c) states that "[r]ecommended conditions of supervised release are set forth in § 5B1.4." In turn, § 5B1.4(b)(18) of the Sentencing Guidelines provides that "[i]f the court . . . orders the defendant to pay a fine, it is recommended that the court impose a condition requiring the defendant to provide the probation officer access to any requested financial information."

Grant argues that the disclosure condition requires him and all churches with which he is affiliated to provide financial information to the probation officer; such a requirement, he claims, substantially burdens his free exercise of religion because any church through which he exercises his beliefs will be subjected to the order. However, Grant reads the order too broadly. While the order requires Grant to report income that he receives personally or on behalf of the two closely-held church-related entities that he controls, it does not require any church to provide the probation officer with financial information. We

_____

this issue; because we conclude that the disclosure order does not substantially burden Grant's free exercise of religion, his RFRA claim must fail.

11

conclude that the disclosure order does not substantially burden Grant's free exercise of religion.

C.

Grant initially challenged the court's requirement that he publish notice of the offense in a publication of Grant's evangelistic association. However, on April 2, 1997, nearly a year after its initial judgment, the district court entered an amended judgment deleting the notification requirement. While we have no quarrel with the amendment, the court lacked jurisdiction to take such action. *See* Fed. R. Crim. P. 35(c) (permitting court to correct sentence within seven days after imposing sentence). Therefore, we remand this case to the district court to give it jurisdiction to re-enter its order.

III.

The judgment of the district court is AFFIRMED except that the case is REMANDED to permit the district court to re-enter its April 2, 1997 order.

AFFIRMED AND REMANDED.

12