**UNITED STATES of America,
Plaintiff,**

v.

**John Thomas MONTGOMERY,
Defendant.**

**No. CR. 2:01–00204.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Dec. 14, 2001.

Miller Bushong III, AUSA, Office of the United States Attorney, Southern District of West Virginia, Charleston, West Virginia, for the United States.

David Schles, Charleston, West Virginia, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

On September 19, 2001 the Government filed an Information charging Defendant possessed with intent to distribute more than five (5) grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). The

---

same day, the Assistant United States Attorney sent defense counsel a copy of a proposed plea agreement and a letter with the following representations:

> The crack cocaine at issue has been sent to the drug laboratory for testing and I will forward those results to you when I have them. The amount will be between 5 and 50 grams of crack cocaine. As we discussed, *I have agreed to use the amount of crack cocaine seized at the time of the search warrant on September 7, 2001 as both offense and relevant conduct in this case.* As you are aware, your client waived his right to remain silent and *made incriminating admissions which could be used to significantly increase his relevant conduct. However, out of fairness, I will treat those statements as "use immunized"* in light of defendant's immediate willingness to cooperate with the United States. As you are aware, my position is not binding upon the probation office or the court, but is merely the position I will take with respect to responding to the presentence report and at sentencing.

Letter I at 1 (Sept. 19, 2001).[1] The letter did not disclose the amount of crack cocaine revealed by Defendant's "incriminating admissions."

After securing new counsel, Defendant signed a plea agreement on November 1, 2001. The agreement contained his promise to plead guilty to the Information in exchange for certain promises from the Government. The agreement listed the maximum potential penalty of imprisonment of at least five (5), and not more than forty (40), years. The agreement also contained the following provisions:

> 6. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Mr. Montgomery, nothing contained in any statement or testimony provided by Mr. Montgomery pursuant to this agreement, or any evidence developed therefrom, will be used against Mr. Montgomery, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

> 10. **VOIDING OF AGREEMENT.** If either the United States or Mr. Montgomery violates the terms of this agreement, the other party will have the right to void this agreement. *If the Court refuses to accept this agreement, it shall be void.*

> 11. **ENTIRETY OF AGREEMENT.** This written agreement constitutes the entire agreement between the United States and Mr. Montgomery in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Mr. Montgomery in any Court other than the United States District Court for the Southern District of West Virginia.

Plea agmt. ¶¶ 6, 10, 11 (emphasis added).

On November 6, the parties appeared for a plea hearing. At the hearing, the

---

1. The Government's representation its agreement was not binding on the Court, while perhaps technically accurate, may be *practically* overstated. Were the Court to impose sentence based upon the relevant conduct revealed by an independent investigation by the Probation Officer, and different from that agreed to by the parties, an appeal would surely follow. On appeal, the Government likely would interpret the agreement as requiring it either to stand silent or affirmatively urge a result contrary to the sentencing court's findings on additional relevant conduct based on additional drug quantities.

Court stated with respect to the relevant conduct letter:

> Well, so long as it is understood that the Court is not bound by that, I can see the basis for it and, you know, unless I'm surprised by *an incredibly large amount* or different set of facts, I would be inclined to go along with this. But we will just wait and see what the presentence investigation report discloses.
>
> [AUSA]: The amount is in the neighborhood of *several additional ounces* of crack cocaine.
>
> THE COURT: All right.
>
> . . . .
>
> THE COURT: [To Defendant] ... And, again, do you understand that at this point, the Court is not bound to accept and follow the government's position here but the Court does retain the discretion to act upon the facts disclosed it in the presentence investigation report and to resolve disputed matters and then impose the appropriate sentence?
>
> THE DEFENDANT: Yes, Your Honor.
>
> . . . .
>
> THE COURT: .... I will approve the proposed agreement *but contingent upon the outcome of a full presentence investigation report* that will be independently researched and prepared by the Court's probation officer.

Trans. of plea hrg. at 7–10 (emphasis added). The Court entered a Plea Order the following day in which it "provisionally approved the plea agreement, pending review of a presentence report, and accepted the Defendant's plea of guilty conditionally." Plea Order at 3.

On November 13, the Court rejected a plea agreement in a related case, *United States v. Poore*, 2:01–00205. The Court rejected the agreement based upon language in a relevant conduct letter similar, if not identical, to that used in the instant case. At the hearing, the Court focused on that portion of the letter stating Poore "made incriminating admissions which could be used to *significantly* increase her relevant conduct." *See* Trans. of plea hrg. at 8. Upon inquiry at the hearing, the Assistant United States Attorney again stated "I'm referring to quantities in the neighborhood of *several ounces, three or four additional ounces ....*" *Id.* (emphasis added). In its minute Order following rejection of the agreement, the Court "[a]s more fully stated from the bench, expressed concerns regarding the Government's representations on use immunization of certain statements made by the Defendant upon her arrest." *Id.*

Following the *Poore* hearing,[2] the Government moved for a hearing in the instant case "to address the Court on the record regarding the future procedural history of this case." Mot. at 2. On November 21, the Government furnished the Court and the attorneys for Ms. Poore and Defendant a revised relevant conduct letter containing the following terms:

> First, with respect to the charging document and offense conduct, the Informations charge your clients with violations of Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute more than 5 grams of cocaine base). The offense conduct which supports a factual basis and triggers the

---

**2.** The Court subsequently rescheduled the *Poore* plea at the request of counsel. While the Court harbored serious concerns regarding whether the proposed plea satisfied the requirements of Chapter Six of the United States Sentencing Guidelines, it provisionally and conditionally accepted the plea in *Poore* pending the outcome of an independently prepared presentence report. That report may very well require the ultimate rejection of the plea, depending upon its contents.

statutory mandatory minimum is 17.9 grams of cocaine base and the cocaine base equivalent of converting approximately $3,000 (approx. 20–30 grams of crack) seized at the time of defendants' arrest. Accordingly, the offense conduct is within the 5 to 50 gram range, and triggers a mandatory minimum 5 to 40 year sentence. The charging documents are, therefore, correct on their face.

Now, with respect to relevant conduct. All of the potential relevant conduct comes from the evidence developed from your clients following their arrest, Miranda waivers, and statements to the police. In other words, all of the potential relevant conduct is the sum of your clients' admissions. From a review of the police reports containing summaries of your clients' admissions, it appears that the potential relevant conduct is *approximately 9 to 10 ounces* of cocaine base.

In the previous "relevant conduct" letters I wrote to each of you, I explained that at sentencing it would be my position that those *9 to 10 ounces* of crack should not be counted against your clients, given their immediate cooperation with law enforcement. I used the term "use immunized" in those letters. My use of that term was improper, misleading and is not supported by law. The relevant conduct in each of your client's cases may well include the *9 to 10 ounces* of cocaine base contained in their admissions. And if so included, your clients' guideline ranges will so reflect, but in no case could that range exceed a term of imprisonment of 40 years. *Therefore, the charging documents and proposed plea agreements do not undermine the statute or the guidelines.*

I apologize for any confusion my previous relevant conduct letters may have caused. If your clients wish to withdraw or void their plea agreements based upon this relevant conduct issue, the United States will not object and will proceed with the case before a grand jury. If, on the other hand, your clients wish to go forward with their guilty pleas, and if they comply with the terms of the agreement, I will bring to the Court's attention, through my response to the pre-sentence report and at sentencing, your clients' extraordinary cooperation, and will reserve the right to move the Court to depart downward from the sentencing guidelines to reflect their cooperation. As you are well aware, the Court is not bound by such a motion.

Letter II at 1–2 (Nov. 21, 2001) (emphasis added).

The Court granted the Government's motion for a hearing and held an inquiry on November 27. At the hearing, however, Defendant Montgomery requested additional time to consider the new developments in the case. Accordingly, the Court adjourned the hearing. On November 29, Defendant sent a letter *pro se* to the Court stating pertinently:

Upon arrival in your courtroom, I discovered that it was the government was filing a motion wanting my original plea agreement revised *concerning drug quantity that had been capped in my original agreement.*

I am at this time letting the court know that I object to any revisions to my original plea agreement. I entered into this agreement in good faith and expect the government to honor their agreement. I am in no way wanting my case to go to trial nor am I making any statements that deny my responsibility in my crime.

I would hope that your honor since accepting my original plea agreement allows it to stand as is.

Letter III at 1–2 (emphasis added).[3]

The Court continued the hearing to December 11. At the onset of the December 11 hearing, Defendant's lawyer advised the Court the Defendant sought to relieve him of his responsibilities in the case and seek new counsel. Appointed counsel also agreed he could no longer represent Defendant. The Court granted the request and directed the appointment of the next available CJA panel attorney. The hearing on the efficacy of the plea agreement was continued again pending the appearance of new counsel.

During the December hearing, the Assistant United States Attorney, *inter alia*, requested the Court void the plea agreement because Defendant was not cooperating and also suggested the Court previously, and in unqualified fashion, had accepted the agreement as tendered. The Court corrected counsel. A subsequent review of the record, as noted *supra*, manifestly demonstrates the Court accepted the agreement conditionally and that counsel and Defendant were unequivocally so noticed.

## I. DISCUSSION

*Rule* 11(e)(4), *Federal Rules of Criminal Procedure*, provides:

**Rejection of a Plea Agreement.** If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea or plea of nolo

contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

*Id.*

The Court must reject the present plea, given the Defendant's confusion and uncertainty with the process, the entry of new counsel into the case, the Government's demand the Court reject the plea because Defendant has breached it, and Defendant's assertion the Government backed away from an agreement capping drug quantity with him. Whether the Government will be bound by its representations in the September 19 relevant conduct letter and later actions are not before the Court. Consequently, the Court expresses no opinion on the resolution of that question and certainly will not insinuate itself into the negotiation process. A further word, however, is in order about the existing record and the Court's obligations under the Guidelines and *Rule* 11.

In making the decision of whether to accept or reject a proposed plea agreement, a Court is called upon to consider Chapter Six of the *United States Sentencing Guidelines*. The Commentary to Section 6B1.2 (Policy Statement) provides:

[W]hen the dismissal of charges *or agreement not to pursue potential charges* is contingent on acceptance of a plea agreement, the court's authority to adjudicate guilt and impose sentence is implicated, and *the court is to determine whether or not dismissal of charges will undermine the sentencing guidelines.*

. . . .

The second paragraph of subsection (a) provides that a plea agreement that in-

---

**3.** The Court also notes in a letter received this morning Defendant Poore, like Defendant Montgomery, harbors concerns on the issue of relevant conduct. *See* Letter from Tikisha Poore at 1 (Dec. 14, 2001) ("There has been ounces of crack added to my statement that I don't have any idea where it came from.").

cludes the dismissal of a charge, *or a plea agreement not to pursue a potential charge,* shall not prevent the conduct underlying that charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted. This paragraph *prevents a plea agreement from restricting consideration of conduct that is within the scope of § 1B1.3* (Relevant Conduct) in respect to the count(s) of which the defendant is convicted; it does not in any way expand or modify the scope of § 1B1.3 (Relevant Conduct).

U.S.S.G. § 6B1.2 comment. (emphasis added); *see also* Chapter Six Introduc. Comment. ¶ 2 ("Congress indicated that it expects judges 'to examine plea agreements to make certain that prosecutors have not used plea bargaining to undermine the sentencing guidelines.' ")[4] As noted by our Court of Appeals, the purpose of Chapter Six is "to carry out the [Commission and] Congressional intent that prosecutors do not use plea agreements to undermine the workings of the Sentencing Guidelines." *United States v. Ewing,* 957 F.2d 115, 117 (4th Cir.1992).

An opinion from the Court of Appeals for the Seventh Circuit discusses the oftentimes difficult, yet mandatory, obligation of a district court since the advent of the Guidelines:

> The sentencing judge plays an important role in the plea bargaining process.

With the enactment of the sentencing guidelines, Congress directed judges "to examine plea agreements to make certain that prosecutors have not used plea bargaining to undermine the sentencing guidelines." S.Rep. 225, 98th Cong., 1st Sess. 63, 167 (1983). One concern with the sentencing guidelines is that they may have transferred too much discretion away from the court to the prosecutor. Report of the Federal Courts Study Committee, April 2, 1990, reprinted in, 2 Federal Sentencing Reporter 232, 243 (1990). Of course, prosecutors have always had the responsibility of determining what charges shall be brought. But with the sentencing guidelines emphasis on the offense of conviction as a starting point in calculating the offense level, prosecutors may be able to circumvent the guideline sentence in their plea bargaining with a defendant. *See* William W. Wilkins, Jr. & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495, 498–99 (1990).

. . . .

Therefore, the sentencing guidelines place a great responsibility on the sentencing judge to use his or her discretionary authority when examining and inspecting plea agreements pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Albert W. Alschuler,

---

4. Section 6B1.2(a) provides:
    In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges [Rule 11(e)(1)(A) ], the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines.

However, a plea agreement that includes the dismissal of a charge or *a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted.*
*Id.*

*Departures and Plea Agreements Under the Sentencing Guidelines,* 117 F.R.D. 459, 475 (1987); Wilkins, Jr. & Steer, *supra,* at 500. *The sentencing judge must ensure that the main objectives of the sentencing guidelines, consistency and certainty in sentencing, are not undermined by plea bargaining between the parties. "Certainty in sentencing cannot be achieved when prosecutors have broad discretion to substitute one charge for another in plea bargaining."* Alschuler, *supra,* at 475.

*United States v. Greener,* 979 F.2d 517, 520 (7th Cir.1992) (emphasis added).

The record in this case has exposed a number of problems, commencing with the September 19 relevant conduct letter. In paragraph two, in the space of just six sentences, the Assistant United States Attorney promises:

1. *"I will allow* Mr. Montgomery to plead guilty by way of information[;]"

2. *"I have agreed* to use the amount of crack cocaine seized at the time of the search ... as both offense and relevant conduct[;]"

3. *"I will treat* those statements as 'use immunized' in light of defendant's immediate willingness to cooperate[;]"

Letter I at 1 (emphasis added). While those unilateral representations are followed with a *pro forma* sentence noting his position is not binding on the Court, one reading the letter is left with the definite impression the Government holds all the cards and has the ability to make binding promises that will govern the scope of sentencing.

The Court's role was undermined further by the language of the second letter of November 21, purporting to change the Government's position on relevant conduct.

That letter contains a conclusory, and inappropriate, finding "the charging documents and proposed plea agreements do not undermine the statute or the guidelines." Letter II at 2. The Commission and Congress reserved that finding to the sentencing court alone.

The transcript also reflects Defendant and Ms. Poore were advised by the Assistant United States Attorney on the record at their plea hearings that the uncounted relevant conduct would amount to "several" additional ounces. When the second relevant conduct letter was sent, however, that amount was roughly tripled, resulting in potential, approximate relevant conduct of a whopping 300 grams of cocaine base. The Court is uncertain what prior representations were made to Defendant, but the cumulative record reflects a vast disparity on the quantity issue. Defendant Poore's letter today reveals she is perplexed by the now escalated quantities.

Next, despite the Court's best efforts to convey its procedure in accepting plea agreements conditionally pending the outcome of the PSR, as recently as the last hearing this week, the Assistant United States Attorney persisted in open court the undersigned Judge had accepted the agreement without condition or qualification. As the Court stressed then, and pointedly notes once again, that has not occurred.

These inflictions by the Government upon itself and the process are just a sampling of the issues raised and now confronting the Court before it may resolve the case. In the future, many of these difficulties can be avoided by observance of, and adherence to, the respective responsibilities of counsel and the Court in plea negotiation, plea taking, and the sentencing process. The role of the Court includes its unquestioned right to reject a proffered plea if it does not meet the re-

quirements of the law, the Guidelines, and Rules of Criminal Procedure.

Based on the foregoing, the Court **REJECTS** the proffered plea and **VACATES** the provisional finding of guilt in the November 7 Plea Order. The Court previously continued the "hearing on the efficacy of the plea agreement." Order Granting Mot. to Withdraw and Contin. at 1. The Court excluded time under the Speedy Trial Act from December 11, 2001 "through the new hearing date." *Id.* at 2. Having now rejected the plea, the Speedy Trial Act clocks begins running again. Further, although the plea has been rejected, the question remains whether the Government is bound by any separate putative agreement arising from prior documents and proceedings. The Court expresses *no opinion on those issues.*

The Court **SCHEDULES** a *Rule* 11(e)(4) hearing on Monday, December 17, 2001 at 1:30 p.m. in Charleston for purposes of advising Defendant on the record, with new counsel, of the relevant considerations mandated by the Rule.

The Clerk is directed to send a copy of this Memorandum Opinion to counsel of record in this case and the *Poore* case (2:01–00205), the Probation Officer assigned to both cases, and the Marshal for the District. The Clerk is further directed to post a copy of this Memorandum Opinion and Order on the Court's website at http://www.wvsd.uscourts.gov.